UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KAMINA PINDER and<br>SCOTT SIGMAN,<br><br>    Plaintiffs,<br><br>v.<br><br>JOHN MARSHALL LAW SCHOOL, LLC<br>and JOHN MARSHALL LAW SCHOOL,<br><br>    Defendants. | :<br>:<br>: CIVIL ACTION FILE NO.<br>: 1:12-cv-03300-WSD-JSA<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## PLAINTIFFS' RESPONSE TO DEFENDANT JOHN MARSHALL LAW SCHOOL, LLC'S MOTION FOR RECONSIDERATION OF MARCH 31, 2014 OPINION AND ORDER

Defendant[1] seeks to take advantage of a safety net that exists only for those rare circumstances when a legal or factual error slips past the court. Here, no such error has occurred, and Defendant has raised inconsequential and old arguments in a redundant, last ditch effort to persuade this Court once more of its positions. This is not the purpose of a Motion for Reconsideration, the Motion is not

---

[1] The Magistrate Judge recommended that John Marshall Law School is not a proper party to this action. Plaintiffs did not object to this recommendation and accordingly refer only to John Marshall Law School, LLC in this Response, and refer to it as "JMLS" or "Defendant."

*absolutely necessary*, and Plaintiffs request that this Court deny Defendant's Motion for Reconsideration in its entirety.

Local Rule 7.2(E) states that "[m]otions for reconsideration shall *not* be filed as a matter of routine practice" and authorizes a motion for reconsideration only when "absolutely necessary." N.D. Ga. R. 7.2(E)(2001) (emphasis added). "Reconsideration is only 'absolutely necessary' where there is: 1) newly discovered evidence; 2) an intervening development or change in controlling law; or 3) a need to correct a clear error of law or fact." *Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003) (citations omitted). "Parties may not use a motion for reconsideration as an opportunity to show the court how it 'could have done it better.'" *Id*. at 1259 (quoting *Pres. Endangered Areas of Cobb's History, Inc.*, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995)); *see also Curry v. O'Brien*, No. 1:11-cv-03088-WSD, 2014 WL 793524, at *2 (N.D. Ga. Feb. 27, 2014).

The Court must deny Motions for Reconsideration that include arguments already heard and dismissed or repackaged arguments designed to test whether the Court will change its mind. *Bryan*, 246 F. Supp. 2d at 1259 (quoting *Brogdon ex rel. Cline v. Nat'l Healthcare, Corp.*, 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000)). "[I]mportant goals vital to just and efficient judicial process can be safeguarded only if courts refrain from revisiting settled issues in a particular case

unless there is a compelling justification to do so." *Annunziata v. School Bd. of Miami-Dade County, Fla.*, No. 04-12560, 2005 WL 591205, at *2 (11th Cir. 2005) (citing *Klay v. PacifiCare Healthy Sys., Inc.*, 389 F. 3d 1191, 1197 (11th Cir. 2004) (internal quotations omitted)).

Here, Defendant has patently failed to point to any newly discovered evidence, change in controlling law, or clear error. *Bryant v. Jones*, No. 1:04-cv-2464-WSD, 2007 WL 113959, at *1 (N.D. Ga. Jan. 10, 2007) (Defendant's motion for reconsideration was not appropriate where defendant "primarily rehash[es] arguments already made in their motions for summary judgment.") Each of the arguments presented by Defendant has already been evaluated by this Court. Defendant has simply repackaged their previous arguments. In short, they are telling the court it "could have done better." *Bryan*, 246 F. Supp. 2d at 1259. Accordingly, Defendant's Motion for Reconsideration of March 31, 2014 Opinion and Order should be DENIED.[2]

---

[2] To the extent possible, Plaintiffs shall refrain from reiterating arguments they have previously made, which this Court has already found persuasive. Additionally, Defendant did not move the Court to reconsider Plaintiffs' breach of contract claim, and as such, Plaintiffs do not address that issue here.

3

### I. A Jury Could Conclude That Kathleen Burch is Pinder's and Sigman's Comparator

JMLS Professor Kathleen Burch, a white professor who did not engage in protected activity, started and began operating a for-profit bar exam tutoring business in December 2012.  (Burch Dep. 13:18-24, 36:16-22, 64:3-8; Pinder Dep. 194:20-23; Lynn Dep. II 293:19-23.)  There is no distinction between LSA and Burch's bar exam tutoring other than "the obvious distinction, one is on the front end of law school and one is on the back end of law school."  (de Haven Dep. 77:11-18.)  Burch, without Dean Lynn's knowledge, obtained private and confidential information about former JMLS students -- the results of their Bar examinations -- from Dean Lynn's secretary, Barbara Chelikowsky.  (Burch Dep. 71:4-21, Pl. Exs. 192, 204.)  Burch, still without Dean Lynn's knowledge, obtained the contact information of the students who failed the Bar from Barbara Chelikowsky, and used JMLS resources to send correspondence to solicit prospective clients. (Burch Dep. 71:4-21, Pl. Exs. 192, 204.)  Burch uses the John Marshall Law School name on advertisements for her business.  (Pl. Ex. 192.) Burch did not discuss her business with Dean Lynn until "a few days before February 18, 2013."  (Lynn Dep. I, 245:6-246:21.)

On February 18, 2013, Dean Lynn wrote to Professor Burch:

> **Kathe, when you spoke to me about the bar prep business, I was focused on doing anything that you wanted to do, but it has been pointed out to me that I may have acted inconsistently compared to Sigman and Pinder.** *Now that has been raised, I'm not sure how to distinguish the two situations*.[3]

(Lynn Dep. I, 240:19-241:12; Pl. Ex. 191 (emphasis added); Burch Dep. 75:3-10.) Burch, a white professor who did not engage in protected conduct -- but did engage in conduct almost identical to Pinder and Sigman -- was not terminated or in any way disciplined by Dean Lynn for engaging in the exact same conduct as Pinder and Sigman. (Burch Dep. 36:16-22, 64:3-8; Lynn Dep II 293:19-23.)

    Defendant *again* argues that Pinder and Sigman cannot establish prima facie case of race discrimination and/or retaliation under Title VII and § 1981, again alleging that Sigman is Pinder's proper comparator and Kathleen Burch is not either's comparator. (Doc. 82, p. 8-11, 20.) For the same reasons Plaintiffs set forth at the summary judgment proceedings in this case, and in Plaintiffs' Response to Defendant's Objections to Magistrate Judge's Order and Non-Final Report and Recommendation, Defendant's argument still fails.

---

[3] Burch did not reply to this email with any distinction at all. (Burch Dep. 75:20-76:18, 79:11-15.)

A.   Sigman Is Not Pinder's Comparator[4]

Defendants continue to ignore their obvious problem -- both Plaintiffs have brought forth evidence creating a disputed issue of fact, appropriate for determination only by a jury, that neither of them was actually terminated because of the LSA course and that the conduct that they both engaged in was actually a pretext for race based termination in Pinder's case and retaliation for expressing concerns about racial discrimination in Sigman's case. As such, Plaintiffs are not similarly situated.  The Magistrate Judge and the District Judge considered the undisputed facts and the facts remaining in dispute, and correctly determined that a jury could find that Sigman cannot be Pinder's comparator (and vice versa) in the context of this case and that Burch, on the other hand, could be.  Defendant has pointed to no newly discovered evidence, change in controlling law, or clear error made by the Magistrate Judge or the District Judge, but rather, simply disagrees with the Court's determination.

Defendant's continued attempts to distinguish *Ondricko,* despite the District Judge's clear reasoning that the case is persuasive, do not identify a clear error of fact or law.  First, Defendant again notes that Sixth Circuit case law is not

---

[4]   For the same reasons that Sigman is not Pinder's comparator, Pinder is not Sigman's comparator.  As set forth below, Burch is a comparator for both Plaintiffs – Burch is a white professor who did not engage in protected activity but did engage in the almost identical "misconduct" to Pinder and Sigman.

controlling. (Doc. 82, p. 10.) However, it is well established that courts "consider decisions from other circuits as persuasive authority, as did the District Court here." *FDIC v. Skow*, 955 F. Supp. 2d 1357, 1374 (N.D. Ga. 2012) (affirmed in part sub nom, *F.D.I.C. v. Skow*, 12-15878, 2013 WL 6726918 (11th Cir. Dec. 23, 2013) (citing *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010).). Second, Plaintiff has *still* found no precedent standing for the proposition that the similarly situated standard is any different in mixed motive cases, and as such Defendant's objection to the Magistrate Judge's and District Judge's use of the *Ondricko* case as persuasive authority continues to hold no water. Because a jury could weigh the evidence here and decide that Sigman and Pinder are not comparators, the denial of summary judgment was properly entered.

      B.      Kathleen Burch is Pinder's and Sigman's Comparator

The Magistrate Judge correctly noted that "the existence of a comparator who was treated similarly to Plaintiff does not defeat a *prima facie* case." (Doc. 79, p. 69.) *See Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642 (6th Cir. 2012). The District Judge agreed and found that "Burch is a viable comparator," and that a "jury could find that Burch's testimony and Dean Lynn's recantation at his deposition are not credible, and conclude that Burch did not ask for Dean

Lynn's permission before she started her bar preparation venture." (Doc. 87, pp. 20-21.)

As correctly recommended by the Magistrate Judge and adopted by the District Judge, a jury could find that Pinder's and Sigman's real comparator is Kathleen Burch, a JMLS professor who engaged in (and to Plaintiffs' knowledge is currently engaged in) a business venture *nearly identical* to Plaintiffs' LSA business. (Burch Dep. 13:18-24.) Burch's Bar Prep business is a bar exam tutoring course (LSA was also a tutoring course, albeit pre-law school) allegedly for students who fail the Georgia State Bar examination on the first attempt. (Burch Dep. 13:18-24, 100:25-101:5; Pl. Exs. 192, 204.) Importantly, as late as February 2013, during discovery in this case, Dean Lynn, the decision maker, could not distinguish the Plaintiffs' business and Burch's business, as demonstrated by his email to Burch:

> **Kathe, when you spoke to me about the bar prep business, I was focused on doing about anything that you wanted to do, but it has been pointed out to me that I may have acted inconsistently compared to Sigman and Pinder. Now that has been raised, I'm not sure how to distinguish the two situations.**

(Pl. Ex. 191 (emphasis added).) Defendant cannot escape the fact that Burch, a white professor who engaged in almost identical conduct and was not terminated by Dean Lynn, is Plaintiffs' comparator. (Burch Dep. 36:16-22.) *See Ondricko*,

8

689 F.3d 642. ("given the four similarly situated male employees who were not terminated based on similar conduct, MGM cannot defeat the inference of a discriminatory motive with one comparator who was treated similarly"); *see also Loesch v. City of Philadelphia*, No. 05-cv-0578, 2008 WL 2367310, at *5 (E.D. Pa. June 4, 2008) (affirming denial of summary judgment where, although there were individuals inside of plaintiffs' protected class who engaged in similar conduct and were not terminated, plaintiff pointed to comparators outside of her protected class who also engaged in the same conduct and also were not terminated).

In rearguing its point that Burch is not Plaintiffs' comparator, Defendant again ignores the court's holding and the distinct factual differences in *Summers v. City of Dothan, Ala.*, 757 F. Supp. 2d 1184, 1204 (M.D. Ala. 2010). First, *Summers* did not involve a comparator who engaged in misconduct after the plaintiff was terminated, like here. *Id*. Rather, in *Summers*, the court found that the individual identified by the plaintiff was not a comparator because the other employee did not violate the same work rule as the plaintiff. *Id*. Here, Burch engaged in the same conduct that Defendant alleges Pinder and Sigman engaged in and as such, violated the same work rule but was not terminated.

Second, Defendant also relies on *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989), yet another factually distinguishable case. *Jones* also did not

9

involve a comparator who engaged in the same misconduct *after* the plaintiff, as here. *Jones*, 874 F.2d at 1541 (plaintiff identified no comparators because the decision maker was not aware of the other employees' rule violations and "disciplinary measures [were] under taken by different supervisors"). Defendant's newfound reliance on *Jones,* as such, is also misplaced. In sum, Defendant's rehashed arguments about Burch's status as Pinder's and Sigman's comparators remain unpersuasive.

Here, there is no dispute that Dean Lynn knew about Burch's misconduct, and did not take the same actions against her as he did against her black colleague, Pinder, and her colleague who engaged in protected activity, Sigman, even though, from his perspective, Burch's conduct was indistinguishable.[5] (Pl. Ex. 191.) That Burch engaged in this misconduct after Plaintiffs initiated this lawsuit is, as such, irrelevant, and the Magistrate Judge and District Judge were correct in not giving weight to this fact. Defendant's lengthy re-explanation of its view of *Summers*, and new explanation about how it views *Jones* (neither of which is a new decision) remains untenable.

---

[5] The fact is, Pinder and Sigman's discipline for this indistinguishable conduct was front and center for Dean Lynn when he considered Burch's conduct. Even though Burch never replied to his email and never suggested a distinction between her conduct and Plaintiffs', Dean Lynn elected to cut her a break and allow her to keep her job while continuing her outside business activity -- a break he denied to Pinder and Sigman.

    C.    The Magistrate Judge and District Judge Were Correct To Find An Issue Of Fact On Prior Permission For Burch's Business

The Magistrate Judge and District Judge also properly found that there is a genuine issue of fact as to whether Burch had prior permission to start her Bar Prep course. The evidence is undisputed that Burch started her business in December of 2012. (Burch Dep. 13:18-24, 36:16-22.) Burch admitted that in order to start her business, she procured the Dean's confidential list of John Marshall students who had passed the bar, reverse engineered it to learn who had failed it, obtained their email addresses as well from the Dean's secretary, built her website (inclusive of the JMLS logo), and sent email solicitations to the students. (Burch Dep. 71:4-21, Pl. Exs. 192, 204.) Burch's use of JMLS's name and equipment to start her business is not in dispute.

On the first day of his deposition, Dean Lynn *specifically testified* that Burch informed him of her business "only a few days before February 18th, 2013," (Lynn Dep. I 245:6-246:21), three months after she started the business and appropriated the confidential information. In his second deposition, Lynn testified that "driving home after the [first] deposition," he realized that he "must be wrong" regarding when Burch mentioned her course to him. (Lynn Dep. I 269:8-270:1.) As noted by the Magistrate Judge, Lynn's second day testimony "was based, not on any newly refreshed memory, but on a deduction…[b]ased on emails he was shown" in

11

the first deposition. (Lynn Dep. I 269:8-270:1.) Lynn did not testify that he actually recalled Burch telling him about the business in February 2013; rather, he deduced from the emails that he was shown that he had spoken with Burch before then. (Lynn Dep. I 269:8-270:1.) Importantly, as noted by the Magistrate Judge, Dean Lynn acknowledged that the basis from which he made his deduction could be incorrect, but also Dean Lynn "made clear that his new testimony was not based on any 'specific recollection' of the events." (Doc. 79, p. 66.) (Lynn Dep. I 270:25-271:4.) Indeed, his *best recollection* is that Burch first approached him in mid-February concerning her new business. Additionally, Dean Lynn stated that he had no specific recollection of meeting with Burch at any time prior to February 2013. (Lynn Dep. I 240:17-242:10, 246:27-21.) As such, there is a disputed material fact as to when Burch actually discussed her business with Lynn, and the evidence supports an inference that it was in February 2013, rather than before that time. Because, as here, "where a dispute arises between witnesses, or between two versions of a story presented by the same witness, the Court is obliged to consider the version most favorable to the Plaintiff," the Magistrate Judge and District Judge correctly concluded that these facts, construed in favor of Plaintiffs, entitles them to a trial before a jury of their peers. (Doc. 79, p. 67; Doc. 87, p. 21.)

A jury could find that the launching of LSA and Burch's Bar Prep, both for-profit tutoring businesses, were substantially similar conduct, and could find that Burch did not obtain prior permission from Dean Lynn. As such, both Pinder and Sigman have established Burch to be a proper comparator and Pinder has established the third element of her *prima facie* case of race discrimination.[6] Defendant's rehashed arguments are not persuasive. Defendant has failed to show this Court's decision was "clear error," as required by the law (*Bryan*, 246 F. Supp. 2d at 1258-59), and the Court should deny Defendant's Motion for Reconsideration of March 31, 2014 Opinion and Order.

## II. The Magistrate Judge and District Judge Correctly Found That Sigman Also Carried His Burden at the Summary Judgment Phase and is Entitled to a Jury Trial

Defendant continues to object to the Magistrate Judge's determination and District Judge's agreement that Sigman's claim of retaliation under § 1981 survived summary judgment.[7] The Court has already determined that Sigman met

---

[6] Plaintiffs address the issue of Burch as Sigman's comparator in the context of Sigman's evidence of pretext in his retaliation claim below, in Section II(B). However, as previously noted, for the same reasons that Burch is Pinder's comparator, she is also Sigman's.

[7] Defendant did not object to the Magistrate Judge's determination that Sigman engaged in protected activity when he complained about JMLS students' "contract-related right." (Doc. 79, pp. 96-100.) As such, Plaintiffs did not revisit that argument on that issue in their Response to Defendant's Objection to the R&R.

13

his prima facie case of retaliation and his burden to demonstrate an issue for the jury regarding pretext. These issues cannot be revisited on a motion for reconsideration simply because Defendant does not like the Court's decision, and Defendant's motion trying to do just that should be denied.

> A. Sigman Demonstrated That His Protected Activity Was the "But For" Cause of His Termination

First, Sigman established incredibly close temporal proximity between his complaint and his termination. Sigman complained to Dean Lynn on March 1, 2011. Two days later, on March 3, Dean Lynn informed Sigman that his contract was being nonrenewed. Sigman has established close temporal proximity between his protected activity and his non-renewal with no intervening event. *Jackson v. Dunn Const. Co., Inc.*, 927 F. Supp. 2d 1229, 1242 (N.D. Ala. 2013) (finding that causation was established where there was no evidence of any intervening conduct). *See also Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004); *Bass v. Board of County Comm., Orange County, Fla.*, 256 F.3d 1095, 1119 (11th Cir. 2001); *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 789-99 (11th Cir. 2000).

Second, there is a disputed issue of fact regarding when Dean Lynn made the decision to terminate Sigman. Defendant contends that Dean Lynn made the decision to non-renew Sigman's contract in February 2011, before Sigman

engaged in protected activity.  The evidence demonstrates that on February 14 or 15, Michelle Harris brought LSA's Facebook page to the attention of Dean Lynn. (Harris Dep. 81:23-82:11; Lynn Dep. I, 221:13-19.)  At that point, Lynn and Harris spoke about Plaintiffs' business, and at no point during that conversation did Lynn say he was not going to renew Pinder and Sigman's contracts.  (Harris Dep. 92:16-19, 93:19-94:9.)  It was not until March 2, one day after Sigman complained about race discrimination at JMLS that Dean Lynn for the first time mentioned terminating Pinder and Sigman.  (Pl. Ex. 164; Markovitz Dep. 49:7-20.)  He first documented that decision in an email to Markovitz on March 2.  (Pl. Ex. 164; Markovitz Dep. 49:7-20.)

   As found by the Magistrate Judge, and agreed to by the District Judge, there is a disputed material fact as to when Dean Lynn actually made this decision. Indeed, it is not at all clear when Lynn decided to terminate Pinder and Sigman. (Lynn Dep. I, 222:9-13; Harris Dep. 92:16-19, 93:19-94:9.)  A jury could believe that Dean Lynn learned of the business in February, and then wonder why Dean Lynn did not actually take action until two days after Sigman's complaint.  As such, Sigman can demonstrate that he would not have been terminated but for Lynn's retaliation against him in response to his complaints of discrimination.  *See Univ. of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 2533

(2013) (holding but-for method of proof applies in Title VII retaliation cases). The Magistrate Judge and District Judge correctly determined that there is a genuine issue of fact as to whether Sigman's complaint was the but for cause of his termination. (Doc. 79, p. 104.)

    B.    Sigman Demonstrated Causal Connection and Pretext

The Magistrate Judge and District Judge correctly determined, and Plaintiffs agree that, for the same reasons set forth in the Opinion and Order Adopting the Report and Recommendation and above, at Section I, Sigman has also set forth evidence establishing pretext because a jury could find that Burch is his proper comparator and because he set forth circumstantial evidence to establish a causal connection between his protected activity and the adverse employment action. (Doc. 87, p. 30-31; Doc. 79, p. 102.) As set forth above, Defendant has identified no new evidence or case law regarding Burch's status as Sigman's comparator. Defendant has also not set forth any new arguments regarding its belief that Sigman established circumstantial evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000). As such, with no new evidence, clear error, or new

controlling case law supporting Defendant's Motion for Reconsideration, Sigman is entitled to a jury trial.

## III. Conclusion

Where, as here, the Plaintiffs' comparator, who is white and did not engage in protected activity, committed infractions indistinguishable from the Plaintiffs and was not terminated, summary judgment was appropriately denied. Where the decision maker himself admitted that he could not distinguish between the conduct of Plaintiffs and their comparator, summary judgment was appropriately denied. Where the evidence demonstrates that the decision to terminate Plaintiffs was not made until one day after one engaged in protected activity, summary judgment was appropriately denied. Where the Defendant's excuses for Plaintiffs' termination are demonstrably false, summary judgment was appropriately denied. And where the decision maker's specific testimony on a key issue of material fact changed without explanation, summary judgment must be denied. Defendant has entirely failed to show that this Court erred in its rulings on Plaintiffs' claims.

Plaintiffs respectfully request that this Court DENY Defendant's Motion for Reconsideration of March 31, 2014 Opinion and Order as to Pinder's race discrimination claims under Title VII and § 1981 and Sigman's retaliation claim under § 1981.

Respectfully submitted,

                                THE BUCKLEY LAW FIRM, LLC

                By:   /s/ Jaime L. Duguay
                        Jaime L. Duguay
                        Georgia Bar No. 829447
                        jlduguay@buckleylawatl.com
                        Edward D. Buckley
                        Georgia Bar No. 092750
                        edbuckley@buckleylawatl.com

Promenade, Suite 900
1230 Peachtree Street NE
Atlanta, GA  30309
T:  404-781-1100
F:  404-781-1101

COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that the foregoing has been prepared in Times New Roman (14 point) font, as approved by the Court in LR 5.1B.

Respectfully submitted,

                THE BUCKLEY LAW FIRM, LLC

By:  /s/ Jaime L. Duguay
      Jaime L. Duguay
      Georgia Bar No. 829447
      jlduguay@buckleylawatl.com
      Edward D. Buckley
      Georgia Bar No. 092750
      edbuckley@buckleylawatl.com

Promenade, Suite 900
1230 Peachtree Street NE
Atlanta, GA  30309
Telephone:  (404) 781-1100
Facsimile:   (404) 781-1101

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2014, I electronically filed the foregoing **PLAINTIFFS' RESPONSE TO DEFENDANT JOHN MARSHALL LAW SCHOOL, LLC'S MOTION FOR RECONSIDERATION OF MARCH 31, 201 OPINION AND ORDER** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

    Mary M. Brockington
    Jonathan R. Poole

                      THE BUCKLEY LAW FIRM, LLC

           By:    s/ Jaime L. Duguay
                    Jaime L. Duguay
                    Georgia Bar No. 829447
                    Counsel for Plaintiffs