IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| KAMINA PINDER and SCOTT SIGMAN, | | |
| **Plaintiffs,** | | |
| v. | | 1:12-cv-03300-WSD |
| JOHN MARSHALL LAW SCHOOL, LLC, | | |
| **Defendant.** | | |

## OPINION AND ORDER

This matter is before the Court on Defendant John Marshall Law School, LLC's ("Defendant") Motion for Reconsideration of the Court's March 31, 2014 Opinion and Order ("the March 31, 2014, Order") [89].

## I.    BACKGROUND

On March 31, 2014, the Court adopted Magistrate Judge Justin S. Anand's Non-Final Report and Recommendation ("R&R") and issued an Order and Opinion denying the Defendant's Motion for Summary Judgment on Plaintiff Kamina Pinder's ("Pinder") Title VII and § 1981 claims and Plaintiff Scott Sigman's ("Sigman") § 1981 claim.  In the March 31, 2014, Order, the Court

found that Defendant's Motion for Summary Judgment was required to be denied because there was a question of fact whether Pinder had established a *prima facie* case of discrimination pursuant to Title VII and § 1981, and because it was disputed whether Kathleen Burch ("Burch"), a white professor, is a proper comparator.  The Court determined that there were several factual disputes, including whether Defendant had approved Burch's for-proft business before it was launched, and if it was not approved when launched whether Defendant allowed Burch's business to be conducted while using Pinder's operation of her for-proft business as a basis for the termination of Pinder's contract with the law school even though Dean Richardson Lynn ("Lynn") acknowledged that there was no distinction between Burch's activities and the business activities that led to the termination of Plaintiffs' employment.  These disputed facts, the Court found, were sufficiently material on the issue of whether Pinder's discrimination claim should proceed to trial on whether Burch is a comparator to Pinder's treatment by the law school.[1]  These disputed facts, the Court determined, also bear on the issue

---

[1] In the March 31, 2014, Order, the Court stated that Burch is a "viable comparator—albeit barely."  March 31, 2014, Order at 20.  This statement, when read in context, was meant to communicate that Burch, depending on the resolution of disputed facts at trial, could be viewed as a viable comparator.  For the purposes of the March 31, 2014, Order, the Court concluded that in viewing the facts in a light most favorable to the Plaintiffs, as the Court must do on a Motion

regarding Defendant's decision not to renew the Plaintiffs' contract, including the motivation for the decision and whether it was pretextual.[2]  The Court thus found that the Defendant was not entitled to summary judgment on Pinder's Title VII claim.  Because the Court found that Pinder provided sufficient facts to avoid summary judgment on her Title VII claim, the Court concluded that Defendant's Motion for Summary Judgment on Pinder's § 1981 claim should also be denied because race discrimination claims under Title VII and § 1981 require the same proof, and are analyzed using the McDonnell Douglas framework.

The Court granted the Defendant's Motion for Summary Judgment on Sigman's Title VII claim, but allowed Sigman's § 1981 claim to proceed because he met his burden to show a *prima facie* case of retaliation and produced evidence of pretext based on his disparate treatment and the temporal relationship between his claimed protected activity of reporting discriminatory grading by Professor Michelle Butts to Defendant and Defendant's decision not to renew his teaching contract.

On April 28, 2014, Defendant moved the Court to reconsider its March 31,

---

for Summary Judgment, it is possible that Burch can be found to be a viable comparator even if that possibility is slight.

[2] The disputed facts largely arise from the deposition testimony of Lynn, which at times was internally inconsistent, along with the testimony of Burch and Pinder.

2014, Order.  Defendant argues that the Court erred in concluding that Pinder established a *prima facie* case because Burch is not a valid comparator according to the Eleventh Circuit's decision in Jones v. Gerwens, 874 F.2d 1534 (11th Cir. 1989) and the District Court's decision in Summers v. City of Dothan, 757 F. Supp. 2d 1188 (M.D. Ala 2010).  Defendant contends these cases stand for the proposition that, for purposes of evaluating a discrimination claim based on Title VII and § 1981, a comparator is relevant only if an employer's preferential treatment of the comparator occurred before the alleged discriminatory treatment of a plaintiff.  Defendant also contends that Jones and Summers requires that the conduct of a comparator must be nearly identical to a plaintiff's alleged misconduct at the time the decision was made to take adverse employment action against the plaintiff.  Based on this interpretation of these cases, Defendant argues that Burch is not a valid comparator because Lynn was not aware that Burch operated a for-profit business at the time he decided not to renew the Plaintiffs' appointment at the law school.  Defendant requests the Court to reconsider its decision and find that Pinder failed to establish a *prima facie* case of discrimination.

The Defendant also requests the Court to reconsider its finding that Sigman met his burden to show probative evidence of pretext on his § 1981 retaliation

claim because Sigman also cannot rely on Burch as a comparator.  Defendant contends that Burch is not a valid comparator because (1) Burch and Sigman are both white professors, (2) Burch did not complain to the Defendant about discriminatory grading practices, (3) and Lynn did not know about Burch's for-profit activities when he decided to take adverse employment action against Sigman.

The arguments raised in Defendant's Motion for Reconsideration were considered and dismissed by the Magistrate Judge, and the Court in its March 31, 2014, Order.  The Court reviews the Defendant's arguments again to reiterate why there is no basis to reconsider the conclusions reached in the March 31, 2014, Order.

## II.    DISCUSSION

### A.    Legal Standard

"A motion for reconsideration made after final judgment falls within the ambit of either Rule 59(e) (motion to alter or amend a judgment) or Rule 60(b) (motion for relief from judgment or order)."  Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 806 n.5 (11th Cir. 1993).  The Court does not reconsider its orders as a matter of routine practice.  LR 7.2 E., NDGa.  The Court's Local Rules require the parties to file motions for reconsideration "within

twenty-eight (28) days after entry of the order or judgment."  Id.

Defendants seek reconsideration pursuant to Rule 59(e).  Motions for reconsideration under Rule 59(e) are appropriate only where there is newly-discovered evidence[3] or a need to correct a manifest error of law or fact.  See Hood v. Perdue, 300 F. App'x 699, 700 (11th Cir. 2008) (citing Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996)); Arthur, 500 F.3d at 1343 ("The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact."); Jersawitz v. People TV, 71 F. Supp. 2d 1330, 1344 (N.D. Ga. 1999).[4]

A motion for reconsideration should not be used to present the Court with arguments already heard and dismissed, or to offer new legal theories or evidence

---

[3] Evidence that could have been discovered and presented on the previously-filed motion is not newly discovered.  See Arthur v. King, 500 F.3d 1335, 1343-44 (11th Cir. 2007); see also Mays v. U.S. Postal Serv., 122 F.3d 43, 46 (11th Cir. 1997) ("We join those circuits in holding that where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion.").

[4] Motions for reconsideration under Rule 60(b) are appropriate only where there is "mistake, inadvertence, surprise, or excusable neglect," newly discovered evidence, fraud, a void judgment, or a judgment that has been satisfied or is no longer applicable.  Fed. R. Civ. P. 60(b).

that could have been presented in the previously-filed motion.  See Arthur,
500 F.3d at 1343; O'Neal v. Kennamer, 958 F.2d 1044, 1047 (11th Cir. 1992);
Bryan v. Murphy, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003); see also Jones v.
S. Pan Servs., 450 F. App'x 860, 863 (11th Cir. 2012) ("A motion to alter or
amend a judgment cannot be used to relitigate old matters, raise arguments, or
present evidence that could have been raised prior to the entry of judgment.");
Pres. Endangered Areas, 916 F. Supp. at 1560 ("A motion for reconsideration is
not an opportunity for the moving party and their counsel to instruct the court on
how the court 'could have done it better' the first time.").  Whether to grant a
motion for reconsideration is within the sound discretion of the district court.  See
Region 8, 993 F.2d at 806.

    B.    Analysis

    Defendant seeks reconsideration of the Court's March 31, 2014, Order by
selectively using facts gleaned from the record, and by revising the legal theories
already considered by the Court.

    A February 18, 2013, email from Lynn to Burch was central to the Court's
March 31, 2014, Order.  In the email, Lynn stated that: " . . . it has been pointed
out to me that I may have acted inconsistently compared to Sigman and Pinder.
Now that has been raised, I'm not sure how to distinguish the two situations."  See

Lynn Dep. I, Pl. Ex. 191.  Defendant now argues that this email "demonstrates that [Lynn] had not even considered that Burch may have violated Law School policy until it was suggested to him by someone else in 2013, well after Plaintiffs initiated this litigation."  Def's. Mot. for Reconsideration at 14.  Defendant contends that because the February 18, 2013, email did not exist at the time this action was filed, Lynn could not have "contemplated treating Plaintiffs differently from Ms. Burch." Id. at 15.  Defendant's argument contradicts the record in this case, and it is inconsistent with the arguments raised by Defendant in its Motion for Summary Judgment.

When Burch was deposed in this case on May 5, 2013, she testified that in November 2011, she asked Lynn for his permission to start a bar review program. Burch stated that Lynn "said something along the lines of, anything we can do to help the students pass the bar we should be doing."  Burch Dep. at 60-70.  On June 11, 2013, Lynn testified at his deposition that Burch did not notify him about her business until "only a few days before February 18, 2013."  Lynn Dep. I at 245-46. At his second deposition on June 24, 2013, Lynn declared that he needed to "correct" his earlier testimony regarding if, and when, Burch was given permission to start a for-profit business.  Lynn then testified that "he must be wrong" in concluding that he did not have knowledge of Burch's business activities before

February, 2013.  Lynn Dep. II at 268-69.

Lynn surmised during his second deposition that the emails discovered in this matter show that Burch was collecting student information from his secretary in 2012, so Burch must have spoken to him about her bar review program before it was launched.  Id. at 269-270.  Lynn, however, conceded that his testimony was not based on any "specific recollection" of the events, and acknowledged that Burch could have obtained student information from his secretary without his knowledge and consent.  Id. at 271.

Defendant also justified Plaintiffs' disparate treatment on the grounds that Plaintiffs did not seek Lynn's permission to start a for-profit business while Burch sought and received permission to operate a for-profit business.  Defendant's justification for the disparate treatment was based on its interpretation of the evidence, specifically, that Lynn knew about, and allowed, Burch to operate a for-profit business as early as November, 2011, and no later than some time in 2012. The February 18, 2013, email shows that, upon further reflection, Lynn could not differentiate between the business activities of Burch and the Plaintiffs even though he decided not to renew the Plaintiffs' contracts, but took no adverse action against Burch even though Lynn concluded that "I'm not sure how to distinguish the two situations."

9

The February 18, 2013, email does not establish if, or when, Lynn knew about Burch's bar review program or whether Burch sought and received permission to operate it as a for-profit business.  Defendant's interpretation of the meaning of the email exchange, including if and when Lynn knew of Burch's business activities, is a matter that is required to be resolved by a jury.  Whether Lynn knew of Burch's for-profit business activities prior to the February, 2013 email exchange, and whether Burch was, in fact, permitted to operate a for-profit business before she launched her bar review program are genuine issues of fact that need to be resolved at trial.

The legal arguments offered in Defendant's Motion for Reconsideration also do not persuade the Court to reconsider its March 31, 2014, Order.  In <u>Jones v. Gerwens</u>, the plaintiff, a black police officer of the City of Fort Lauderdale, brought an employment discrimination action under Title VII against the City and the Chief of Police.  874 F.2d at 1537.  The plaintiff argued that the defendants brought disciplinary proceedings against him in a racially selective manner because white police officers, who had committed similar infractions, were not disciplined or received lesser sanctions than those imposed on him for nearly identical conduct.  <u>Id.</u>  It was undisputed that Sergeant Dietrich ("Dietrich"), plaintiff's former supervisor for the Mounted Unit, allowed department vehicles to

be used for personal matters in violation of the Department's rules.  Id. at 1536.

Dietrich was replaced by Sergeant Runnerstrom as plaintiff's supervisor. When Runnerstrom assumed this leadership position, he told the plaintiff that "whatever had happened previously in the Mounted Unit 'was history' and that the Unit would operate 'by the book' under [his] supervision."  Id.  Despite being admonished by his new supervisor and being put on notice by others that Runnerstrom was a 'strict supervisor,' plaintiff used a Mounted Unit vehicle to transport his personal furniture in violation of the City's rules.  Id.  Runnerstrom learned that the plaintiff had used a department vehicle for his personal use and recommended that the plaintiff be suspended.  Id. at 1537.  The plaintiff was transferred to another unit of the department and he received a one-day suspension without pay.  Id.  The plaintiff filed a complaint with the Equal Employment Opportunity Commission and an employment discrimination lawsuit in the United States District Court for the Southern District of Florida.  Id.

The district court determined that plaintiff's Title VII claim failed as a matter of law because he did not show that the City failed to discipline a similarly situated white employee.  Id.  The district court found that "white members of the Mounted Unit who had used the city truck for personal services during [] Dietrich's tenure as supervisor were not similarly situated to Jones for Title VII

11

purposes, because '[] Runnerstrom became supervisor of the Unit on October 21,

1985, and shortly thereafter informed plaintiff that he would run the Unit "by the

book" and that things would not be the same as they had been under [] Dietrich.'"

Id.  The Eleventh Circuit affirmed the district court's grant of summary judgment

in favor of the defendants, noting that disciplinary actions taken by different

supervisors may not be comparable for the purpose of analyzing a Title VII

discrimination claim, stating:

> Inasmuch as Sergeant Runnerstrom initially recommended that Jones
> be disciplined, and the Chief of Police ultimately acted on that
> recommendation, it is the motives of those individuals-not Sergeant
> Dietrich which are at issue.[]  A prima facie case of discriminatory
> motive must show that either Runnerstrom or Gerwens was aware of
> prior uses of the Unit truck by white officers for personal business or
> prior instances in which unauthorized persons had been permitted to
> ride in the truck, and that the known violations were consciously
> overlooked.[]  For the purposes of this Title VII action, Sergeant
> Dietrich's previous tolerance of Unit truck use for personal business
> would be relevant only if it could be shown that either Runnerstrom or
> [the Chief of Police] knew of such practices and did not act to
> discipline rule violators.  As Jones has failed to adduce evidence of
> knowledge on the part of Runnerstrom or [the Chief of Police], he has
> failed to make out a prima facie case of disparate treatment.[]

Id. at 1541-152.

The Supreme Court has repeatedly stated that the plaintiff's burden to

establish a *prima facie* case of discrimination is not onerous, and it can be

demonstrated in numerous ways.  See United States Postal Serv. Board of

Governors v, Aikens, 460 U.S. 711, 715 (1983).  "The prima facie case method . . .
was never intended to be rigid, mechanistic or ritualistic."  Jones, 874 F.2d at 1539
(internal citations and quotation marks omitted).  In McDonnell Douglas Corp. v.
Green, the Supreme Court made it clear that "the facts necessarily will vary in Title
VII cases, and the specifications above of the prima facie proof required from
respondent is not necessarily applicable in every respect to differing factual
situations."  411 U.S. 792, 802 n.13 (1973).

 In this case, there are only one supervisor's actions at issue, and there was
no change in supervisors or departmental policies as existed in Jones.  Lynn is the
only supervisor whose adverse employment actions are at issue in the case in
determining whether Pinder has established a *prima facie* case on her Title VII and
§ 1981 claims.  In Jones, the Eleventh Circuit focused on "prior uses of the Unit
truck by white officers for personal business or prior instances in which
unauthorized persons had been permitted to ride in the truck" because those were
the comparators offered by the plaintiff for purposes of establishing a *prima facie*
case.  Id. at 1541-152.  The plaintiff in Jones sought to prove discrimination by
imputing Dietrich's tolerance of rule violations committed by white officers to
Runnerstrom and the Chief of Police even though there was no evidence that they
knew of the prior violations and overlooked them.

Noticeably absent from the Defendant's Motion for Reconsideration is the fact that the plaintiff in Jones also offered evidence of two occasions where Runnerstrom allegedly allowed white officers to use the department's vehicles for personal use "during the period between the second week of October 1985 and [Jones's] transfer on December 8." Id. at 1542 n.17.  In other words, the plaintiff argued, as Pinder argues here, that he had established a *prima facie* case because white police officers committed nearly identical misconduct on Runnerstrom's watch *after* the plaintiff was disciplined for utilizing the department's vehicles for personal use in violation of the City's rules.  The district court ruled that "Runnerstrom did allow two white officers to use the vehicle after plaintiff had been disciplined," but "the officers used the vehicle in connection with Department business."  Id.  That finding was upheld on appeal by the Eleventh Circuit, which concluded that "the district court has articulated the only reasonable inferences with respect to these two incidents."  Id.  These pertinent facts support that the law does not require Pinder to show that Lynn knew of and ignored "prior violations" by Burch "at the time he made the decision" to terminate Pinder's contract with the law school.

If the relevant focus of Jones was rigidly on the "state of mind of the decisionmaker at the time he makes a decision," as Defendant insists, then the

district court and the Eleventh Circuit would not have focused on whether Runnerstrom allowed white police officers to use the department's vehicles for personal use *after* the plaintiff was disciplined.  Rather, the Eleventh Circuit would have stated in <u>Jones</u> that Runnerstrom's decision to allow white police officers to use the department's vehicles for personal matters *after* the plaintiff was disciplined is irrelevant to the outcome because the relevant focus, for purposes of determining whether there are viable comparators, should be on Runnerstrom's "state of mind at the time he ma[de]" the decision to discipline the plaintiff.  It did not do so.

    That the Eleventh Circuit in <u>Jones</u> considered whether Runnerstrom allowed white police officers to commit nearly identical infractions without facing any adverse consequences *after* the plaintiff was disciplined and not "at the time the decision was made" supports Pinder's effort to establish a *prima facie* case of discrimination by relying on Burch as a comparator.  The Court has concluded that Burch, as a white professor against whom adverse employment action was not taken for operating a for-profit business even though Lynn conceded that there was no distinction between Burch's activities and the business activities of the Plaintiffs, may be a valid comparator to the treatment of Pinder.  The Defendant

has not offered any explanation to discredit this conclusion.[5]

To the extent that Defendant relies on Jones for the principle that Pinder was required to show that Lynn "consciously overlooked" Burch's alleged misconduct, Pinder has met her burden to do so.[6]  Defendant has sought to justify Lynn's decision not to take any action against Burch on several grounds.  Those grounds were rejected by the R&R and the Court's March 31, 2014, Order.  It is undisputed that Burch did not face adverse consequences after Lynn was made aware of her business activities.  It is undisputed that Lynn conceded that Burch's business activities were indistinguishable from the business activities of the Plaintiffs.  It is also undisputed that Burch remains employed as a professor at the law school as of this date despite the fact that Lynn could not differentiate between the business

---

[5] The Defendant's reliance on Summers v. City of Dothan, 757 F. Supp. 2d 1188 (M.D. Ala 2010) and Moreland v. Miami-Dade County, 255 F. Supp. 2d 1304 (S.D. Fla. 2002) is also misplaced because those decisions applied Jones to facts that do not apply here.

[6] The Court does not question that the law requires plaintiffs to show that an employer knew of violations committed by a similarly situated employee and consciously overlooked those violations.  The Defendant, however, has not cited any authority for its argument that the law requires a plaintiff to show that an employer was aware of "prior violations" by a similarly situated employee "at the time the decision is made" to discipline the plaintiff.  That is why Defendant's interpretation of Summers is flawed.  In that case, the violations committed by individuals outside the plaintiff's protected class were completely unknown and the plaintiff presented no evidence to suggest that defendants consciously overlooked those violations.

activities of the Plaintiffs and Burch.  Given these undisputed facts, Pinder has

established a *prima facie* case on her Title VII and § 1981 claims, and the

Defendant's Motion to reconsider the Court's decision on those claims is required

to be denied.[7]

    The Defendant's Motion to reconsider the Court's decision to allow

Sigman's § 1981 claim to proceed is also required to be denied.  "To establish a

claim of retaliation under § 1981, a plaintiff must prove that he engaged in

---

[7] Defendant's claim that <u>Ondricko v. MGM Grand Detroit, LLC</u> is in conflict with
Eleventh Circuit precedent does not have merit.  <u>Ondricko</u> simply stands for the
principle that Defendant "cannot defeat the inference of a discriminatory motive
with one comparator who was treated similarly."  689 F.3d 642, 652 (6th Cir.
2012).  That is precisely what Defendant intends to do here even though, at another
time, it has argued that Pinder and Sigman "are not *nearly identical*.  They are
*identical*.  To ignore that fact and instead rely on Ms. Burch to create an issue of
fact eviscerates the primary requirement that a plaintiff must show that his
employer treated similarly situated employees outside his classification more
favorably."  Def's. Mot. for Reconsideration at 20. (internal citations and quotation
marks omitted) (emphasis in original).  It does not.  The facts here may be found
by a jury to support that Burch is a similarly situated employee because she is a
white professor outside Pinder's classification, and she was treated more favorably
for nearly identical conduct.  That is all Pinder was required to show to establish a
*prima facie* case of discrimination, and she met her burden to do so in this matter.
The record in this case reflects that operating a for-profit business was deemed a
serious violation of the law school's rules when those rules were applied to Pinder.
Defendant may have applied a different set of rules and a different standard to
Burch's business activities.  Whether that disparate treatment was caused by
intentional discrimination or some other legitimate reason is a genuine issue of fact
that must be resolved by a jury.

statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008).  While suspicious timing is ordinarily not enough to demonstrate pretext for a § 1981 claim, it, in "combination [with] other significant evidence of pretext, can be sufficient to survive summary judgment." Shackelford v. Deloitte & Touche, LLP, 190 F.3d 298, 409 (5th Cir. 1999).  The R&R and the Court's March 31, 2014, Order concluded that Sigman had proffered circumstantial evidence sufficient to support a causal connection between the protected activity and the adverse employment action he faced because there was a genuine issue of fact regarding whether Sigman was terminated only a day after he reported his concerns about race-based discrimination with respect to white students' grades.

In reaching this conclusion, the Court reasoned that the timing of Sigman's termination in combination with evidence in the record that Burch started her business venture, perhaps, without permission, and without any adverse consequences was sufficient to establish pretext at the summary judgment stage. Burch's racial background, and the absence of any evidence in the record to suggest that she complained of racially disparate grading is irrelevant to determining whether Lynn's stated reasons for terminating Sigman's employment

were legitimate or a pretext for unlawful discrimination.  Defendant has conflated

the *prima facie* requirement of a Title VII claim, which requires the plaintiff to

demonstrate that a comparator outside of his or her protected class was treated

more favorably for identical conduct, with the different analysis that applies when

the Court examines whether a Defendant's stated reasons for adverse employment

action are a pretext for unlawful retaliation pursuant to § 1981.  Sigman was

terminated because he operated a for-profit business, but Burch was not terminated

even though she did the exact same thing.  That evidence was appropriately taken

into account by the R&R and the Court's March 31, 2014, Order to determine

whether Sigman met his burden to support that the stated reasons for his

termination may be pretextual.

## III.   CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that the Defendant's Motion for

Reconsideration of the Court's March 31, 2014 Opinion and Order is **DENIED**.

**SO ORDERED** this 23rd day of June 2014.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE